UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG YATES,<br><br>        Plaintiff,<br><br>       v.<br><br>AUTO CITY 76, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-10-3932 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>**(Docket No. 59)** |

        Plaintiff Craig Yates has filed suit against Defendants Auto City 76; R.A.T. Oil, Inc.; and Canadian American Oil Co., asserting claims for disability discrimination. More specifically, Mr. Yates claims that Defendants have discriminated against persons with disabilities by failing to remove architectural barriers structural in nature at their public accommodation known as Auto City 76. Currently pending before the Court is Mr. Yates's motion for leave to amend his complaint. Mr. Yates wishes to amend in order to add new factual allegations. In particular, he "seeks to amend . . . to include fifteen (15) post-complaint visits to AUTO CITY 76 wherein on a majority of these visits he encountered architectural barriers and as a result suffered an adverse experience." Mot. at 1-2.

        Having considered the parties' briefs and accompanying submissions, as well as the oral argument of defense counsel,[1] the Court hereby **GRANTS** the motion to amend but orders the parties to meet and confer as provided below.

---

[1] Counsel for Mr. Yates failed to make an appearance at the hearing.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Original Complaint

Mr. Yates initiated this lawsuit on September 1, 2010.  In his original complaint, he alleged as follows.

Mr. Yates is a triplegic who requires the use of a wheelchair to travel about.  *See* Compl. ¶ 5. Mr. Yates visited Auto City 76 on the following dates "for purposes of fueling and the purchasing of sundries," Compl. ¶ 13:

(1)   February 28, 2010;

(2)   March 24, 2010;

(3)   May 2, 2010;

(4)   June 22, 2010;

(5)   July 28, 2010;

(6)   August 2, 2010; and

(7)   August 10, 2010.

*See* Compl. ¶¶ 2, 13.

According to Mr. Yates, on all or some of these dates, he encountered various architectural barriers that prevented him from using the public accommodation.  Those barriers are identified as follows:

(1)   "lack of directional signage to show accessible routes of travel, i.e., to restrooms"[2];

(2)   "lack of the requisite type and number of disabled parking stall(s)";

(3)   "lack of disabled van accessible parking stall(s)";

(4)   "lack of tow-a-way signage";

(5)   "lack of a handicapped-accessible women's public restroom";

---

[2] *See, e.g.*, Compl. ¶ 18 (alleging that one restroom could not be accessed from the mini mart because of a step down and that another restroom inside the mini mart could not be accessed because of a step up).

2

(6)  "lack of a handicapped-accessible men's public restroom"[3];

(7)  "lack of a policy and procedure to assist the disabled in pumping fuel when more than one employee was present"; and

(8)  "other public facilities and elements too numerous to list were improperly inaccessible for use by persons with disabilities."

Compl. ¶ 22.

B.  Proposed Amended Complaint

Approximately a year after filing the original complaint, Mr. Yates moved to file a first amended complaint ("FAC"). In the proposed FAC, Mr. Yates sought to make allegations regarding fifteen additional visits to Auto City 76, each of which took place *after* the filing of the original complaint:

(1)  September 27, 2010;

(2)  September 14, 2011;

(3)  November 29, 2011;

(4)  December 8, 2011;

(5)  January 25, 2012;

(6)  April 9, 2012;

(7)  May 1, 2012;

(8)  May 4, 2012;

(9)  May 28, 2012;

(10) June 5, 2012;

(11) June 19, 2012;

(12) June 26, 2012;

(13) June 30, 2012;

(14) June 12, 2013; and

---

[3] *See, e.g.*, Compl. ¶ 19 (alleging that the men's restroom was not compliant with the Americans with Disabilities Act Accessibility Guidelines (ADAAG) – *e.g.*, the "restroom door was narrow and restroom elements were nonconforming").

(15)  June 20, 2013.

*See* Prop. FAC ¶ 2.

On some visits, Mr. Yates did not encounter any architectural barriers but, on most, he did. Some of the barriers were the same as those experienced on his previous visits covered by the original complaint – *e.g.*, a too-narrow restroom door. But a significant number of new barriers were also identified. For instance, there are now complaints about:

(1) the service counter being too high, *see, e.g.*, Compl. ¶¶ 22-24;

(2) the restroom door having "no strike side clearance to exit," the door pressure being "very high," and the locks being difficult to use, *see, e.g.*, Compl. ¶¶ 26-27, 29, 31;

(3) the placement of the toilet paper dispenser (*i.e.*, "just over the top of the side grab bar which made it difficult for plaintiff . . . to adjust himself in his wheelchair"), Compl. ¶ 27;

(4) the restroom door being "hung wrong," Compl. ¶ 32;

(5) lack of signage for the restrooms, *see* Compl. ¶ 36;

(6) placement of the flush control on the toilet, *see* Compl. ¶ 36;

(7) placement of the water closet in the restroom, *see* Compl. ¶ 36;

(8) various dispensers and hooks in the restroom being too high, *see* Compl. ¶ 36; and

(9) accessibility of the entrance. *See* Compl. ¶ 36.

## II.  DISCUSSION

A.  Legal Standard

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added); *see also Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (noting that "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed").

A trial court has broad discretion in deciding whether to permit a supplemental pleading. *See Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). In deciding whether to permit a supplemental

pleading, a court's focus is on judicial efficiency. *See Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (stating that the goal of Rule 15(d) is to promote judicial efficiency). In essence, Rule 15(d) "enabl[es] a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *Keith*, 858 F.2d at 473. However, factors such as prejudice to the defendant, laches, or futility may weigh against allowing a supplemental pleading. *See id.* 474-75; *Ally Bank v. Castle*, No. 11-CV-896 YGR, 2012 U.S. Dist. LEXIS 118449, at *4 (N.D. Cal. Aug. 20, 2012); *see also Athena Feminine Techs., Inc. v. Wilkes*, No. No. C 10-4868 SBA, 2013 U.S. Dist. LEXIS 16249, at *5 (N.D. Cal. Feb. 6, 2013) (stating that "[t]he legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a)").[4] Furthermore, a court must bear in mind that, even though supplemental pleadings are favored, they "cannot be used to introduce a 'separate, distinct and new cause of action.'"[5] *Planned Parenthood*, 130 F.3d at 402.

In the instant case, Defendants argue against the supplemental pleading on several grounds: (1) undue delay; (2) prejudice; (3) bad faith; and (4) futility.

B.   Undue Delay

Defendants' argument of undue delay is not without any basis. Most of the new visits that Mr. Yates wishes to add in took place between September 2010 and June 2012. As to those visits, Mr. Yates has failed to explain why he delayed for a year or more in adding the factual allegations to the lawsuit.

However, two of the new visits did take place in June 2013, and, arguably, it would make little sense to allow Mr. Yates to litigate these visits, along with the original visits from February to

---

[4] Other courts have also analogized Rule 15(d) to Rule 15(a). *See, e.g.*, *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) ("[T]he standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical."); *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) ("Although these are cases under Fed. R. Civ. P. 15(a), not Rule 15(d), . . . the standard is the same.").

[5] Of course, a supplemental pleading need not arise out of the same transaction as the original pleading. *See Keith*, 858 F.2d at 474 (stating that "some relationship must exist between the newly alleged matters and the subject of the original action, [but] they need not all arise out of the same transaction").

August 2010, but not those from September 2010 to June 2012. Furthermore, as indicated above, some courts have analogized the Rule 15(d) standard to the Rule 15(a) standard and, under Rule 15(a), undue delay by itself is not enough to deny an amendment to a pleading; there must also be, *e.g.*, prejudice, bad faith, or futility. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (stating that "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend"; adding that denial of a motion to amend has been reversed "where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment"). The Court therefore gives little weight to Defendants' undue delay argument.

## C. Prejudice

Defendants do argue prejudice. But the prejudice identified by Defendants is not the kind of prejudice that is usually cognizable. Defendants claim prejudice "on the basis that the proposed amendments are not explained or justified." Opp'n at 3. But usually, a court evaluates prejudice in terms of, *e.g.*, whether discovery cut-offs have passed, how close trial is, and so forth. In this regard, it is difficult for Defendants to argue prejudice because, in the case at bar, the fact discovery cut-off is March 27, 2014, and trial is not set to begin until September 15, 2014. *See* Docket No. 58 (order).

## D. Bad Faith

Defendants' argument of bad faith is also problematic. Defendants seem to argue that Mr. Yates has acted in bad faith because he failed to disclose to the Court all of the amendments sought. *See* Opp'n at 2. But if that is Defendants' argument, it is off the mark once again. The question is whether the *supplemental pleading* is in bad faith; not whether there are defects with Mr. Yates's motion.

## E. Futility

This leaves Defendants with the argument of futility.

### 1. Statute of Limitations

In its papers, Defendants argued that the supplemental pleading is futile because any claims based on the new visits would be time barred. *See* Opp'n at 3. Defendants' position is predicated on

6

there being a one-year statute of limitations for all of Mr. Yates's claims.  In response, Mr. Yates argues that there is a two-year statute of limitations, and therefore all of the new visits are not time barred except for two (*i.e.*, the visits in September 2010 and September 2011) which can be saved through equitable tolling or relation back.

The Court largely agrees with Mr. Yates.  The current statute of limitations for personal injury causes of action is two years, not one.[6]  *See* Cal. Code Civ. Proc. § 335.1 (providing for a two-year limitations period for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another").  Therefore, at most, the visits in September 2010 and September 2010 fall outside the limitations period.

While the Court sees no basis for equitable tolling for these two visits, *see McDonald v. Antelope Valley Comm. College Dist.*, 45 Cal. 4th 88, 100 (2008) (stating that, "[b]roadly speaking, the doctrine applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one") (internal quotation marks omitted); *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (stating that "[e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim"), *overruled in part as stated in Bojorquez v. Gutierrez*, No. 09-03684 SI, 2010 U.S. Dist. LEXIS 75205, at *13 n.1 (N.D. Cal. July 26, 2010), relation back is applicable.

Rule 15(c) provides in relevant part as follows:

> (1) *When an Amendment Relates Back.*  An amendment to a pleading relates back to the date of the original pleading when:
>
>    . . . .
>
>    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading . . . .

///

///

---

[6] The Court notes that, for some of Mr. Yates's claims, an argument could be made that there is a three-year statute of limitations – *i.e.*, for an action upon a liability created by statute.  *See* Cal. Code Civ. Proc. § 338 (providing for a three-year statute of limitations for "[a]n action upon a liability created by statute").  However, because Mr. Yates did not make that argument, the Court deems it waived.

1    Fed. R. Civ. P. 15(c)(1)(B). Relation back can apply to supplemental pleadings, and not just
2    amended pleadings. *See, e.g.*, *United States v. CMA, Inc.*, 890 F.2d 1070, 1073-74 (9th Cir. 1989)
3    (explaining why there was relation back for a supplemental pleading in a prior case but why relation
4    back for a supplemental pleading would be improper in the case under consideration); *Davis v. Piper
5    Airport Corp.*, 615 F.2d 606, 609 n.3 (4th Cir. 1980) (stating that, "[s]o long as the test of Fed. R.
6    Civ. P. 15(c) is met, a supplemental pleading should ordinarily be given the same relation back
7    effect as an amended pleading"); *see also* 3-15 Moore's Fed. Prac. – Civ. § 15.30 (stating that "[a]
8    supplemental pleading may relate back to the date of the original complaint if the requirements
9    under Rule 15(c) for relation back are satisfied").

10   "The rationale of allowing an amendment to relate back is that once a party is notified of
11   litigation involving a specific factual occurrence, the party has received all the notice and protection
12   that the statute of limitations requires." 3-15 Moore's Fed. Prac. – Civ. § 15.19[1]; *see also Percy v.
13   San Francisco Gen. Hosp.*, 841 F.2d 975, 980 (9th Cir. 1988 ) (noting that, "[i]n cases in which the
14   relation back doctrine has been applied, the defendant was given adequate notice by the prior
15   pleading of the facts that caused the injury alleged in the amended pleading"); Wright & Miller, Fed.
16   Prac. & Proc. § 1497 (noting that, "[a]lthough not expressly mentioned in the rule, the courts also
17   inquire into whether the opposing party has been put on notice regarding the claim or defense raised
18   by the amended pleading").

19   "In the typical case of an amendment to the plaintiff's original complaint, the amended
20   complaint relates back when the claims asserted in the amendment arise out of the *same facts or
21   course of conduct* as the claims stated in the original complaint."[7] Moore's § 15.19[2] (emphasis
22   added). For example, in *Tiller v. Atlantic Coast Line Railroad Co.*, 323 U.S. 574 (1945), the
23   plaintiff had originally asserted a claim for relief under the Federal Employers' Liability Act.
24   Subsequently, the plaintiff amended her complaint after the limitations period had expired to add a

---

[7] But "[b]ecause the rationale of the relation-back rule is to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims and parties, the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test." Wright & Miller § 1497.

1  claim based on the Federal Boiler Inspection Act. The Supreme Court held that the amendment

2  related back, noting as follows:

> The original complaint in this case alleged a failure to provide a proper lookout for deceased, to give him proper warning of the approach of the train, to keep the head car properly lighted, to warn the deceased of an unprecedented and unexpected change in the manner of shifting cars. The amended complaint charged the failure to have the locomotive properly lighted. Both of them related to the same general conduct, transaction and occurrence which involved the death of the deceased. There was therefore no departure. The cause of action now, as it was in the beginning, is the same – it is a suit to recover damages for the alleged wrongful death of the deceased. "The effect of the amendment here was to facilitate a fair trial of the existing issues between plaintiff and defendant." There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard.

*Id.* at 581.

The instant case, of course, is different from *Tiller* in that here, Mr. Yates is seeking to add in subsequent events. With respect to subsequent events, some courts have taken a hard line on relation back. *See, e.g.*, *Abramson v. Boedeker*, 379 F.2d 741, 744 (5th Cir. 1967) (stating that "[i]t is perfectly obvious whether on general principles or on F.R. Civ. P. 15(c) that allegations concerning events occurring subsequent to the filing of the original petition cannot possibly relate back to the earlier date of filing"). But the Ninth Circuit has not held that a subsequent event is automatically barred from relation back. Rather, the Ninth Circuit has held that a subsequent event is barred from relation back only where it is unrelated to the events as pled in the original complaint. *See, e.g.*, *Percy*, 841 F.2d at 980 (stating that plaintiff's "first amended complaint implicated an entirely new set of actors who are alleged to have injured [him] in a proceeding which occurred subsequent to, and independent of, the events on which [he] based his original Title VII discrimination claims"; adding that, "[e]ven the most liberal reading of Percy's original complaint fails to provide the City with notice that, in addition to the circumstances surrounding his discharge based upon alleged racial discrimination, the City should have been prepared to defend a claim of a denial of due process in a subsequent Civil Service Commission hearing"); *CMA*, 890 F.2d at 1073-74 (not allowing relation back where the supplemental pleading introduced "what is essentially a

9

1 new party pursuing a new claim based on different facts"; noting that "[t]he supplemental complaint
2 alleges a cause of action arising out of a completely different transaction").
3     Here, there is little dispute that the new visits at issue in the amended complaint have at least
4 some "relatedness" to the old visits as pled in the original complaint.  Indeed, the new visits in
5 September 2010 and September 2011 reference at least one alleged violation that was also
6 referenced for the old visits – *i.e.*, a too-narrow restroom door.  *See, e.g.*, Prop. FAC ¶¶ 19, 21-23;
7 Moore's § 15.30 (indicating that indicate that " a court will allow relation back . . . when the
8 violations alleged in the supplemental complaint are a *continuation of the initial violations* alleged in
9 the original complaint") (emphasis added); Wright & Miller § 1508 (stating that, "if the original
10 pleading gave notice that the conduct, transaction, or occurrence is of a *continuing nature*, defendant
11 should be prepared to defend against all claims arising out of it, whether they arose before or after
12 the original complaint was filed[;] [t]here is little basis to distinguish an amended and a
13 supplemental pleading for purposes of relation back if defendant had notice of the subject matter of
14 the dispute and was not prejudiced in preparing a defense") (emphasis added).  Although the new
15 visits also make mention of an alleged violation that was not referenced for the old visits – *i.e.*, a
16 too-high service counter, *see* Prop. FAC ¶¶ 22-23 – the Court does not see this as a reason to prevent
17 relation back.  The new violation still relates to the same broader issue of equal access to the facility
18 for a person with a disability such as Mr. Yates who uses a wheelchair.
19     2.     Equitable Relief Settlement Agreement
20     For the reasons discussed above, the Court rejects Defendants' argument of futility based on
21 the statute of limitations.  At the hearing, however, Defendants raised a second argument of futility –
22 *i.e.*, that, to the extent Mr. Yates is seeking equitable or injunctive relief based on the new visits,
23 such relief is barred by the parties' "Equitable Settlement Agreement and Release," signed in July
24 2012.
25     As a preliminary matter, the Court notes that Defendants never raised this futility argument
26 in their papers, and therefore Mr. Yates has not had an opportunity to respond, at least in writing.  Of
27
28

10

course, had he appeared for the hearing on the motion (his own motion), Mr. Yates could have provided at least some thoughts as to the merits of this futility argument.[8]

Taking into account these circumstances, the Court concludes that the best way to proceed is to permit Mr. Yates to file his amended complaint; however, the parties shall thereafter be obligated to meet and confer to determine whether they can reach agreement as to whether equitable/injunctive relief based on the new visits is precluded based on the settlement agreement of July 2012. If the parties are able to reach an agreement, then they may submit a joint stipulation and proposed order. If not, then Defendants may file a motion to dismiss in which they can argue that equitable/injunctive relief for all or at least some of the new visits is barred based on the settlement agreement.

In meeting and conferring, the parties shall take note of the following:

The settlement agreement is dated July 2012. All of the new visits took place *before* July 2012, except for two in June 2013. As to the two new visits in June 2013, one of them did not involve Mr. Yates running into any architectural barriers. *See* Prop. FAC ¶ 33. For the other visit in June 2013, Mr. Yates did purport to run into architectural barriers – more specifically, even though "[t]he men's restroom door had been changed out and there was strike side clearance, . . . the door had been hung wrong and it created significant pressure to open." Prop. FAC ¶ 32. Also, "[a]t the service counter, Plaintiff CRAIG YATES had to stretch and stress himself to give the cashier his card[;] [a]nother employee told the cashier to use the lowered section of the counter, which she then did to complete the transaction." Prop. FAC ¶ 32.

It appears that the settlement agreement resolves at least all claims for equitable/injunctive relief that pre-date the July 2012 settlement agreement. The parties shall discuss whether the settlement agreement resolves *all* claims for equitable/injunctive relief – even if based on the June 2013 visits that post-date the settlement agreement. *See, e.g.*:

---

[8] The Court hereby warns Mr. Yates that he risks being sanctioned for a failure to appear at a hearing on a noticed motion, without leave of the Court. Sanctions could constitute either monetary sanctions or preclusion-type sanctions, if so warranted.

11

- Settlement Agreement, Recitals ¶ B ("The parties desire to settle and compromise all equitable claims, only as they relate to injunctive relief, that were or could have been raised in the subject action.");
- Settlement Agreement § 5 ("505 SOUTH VAN NESS AVENUE PARTIES shall notify YATES counsel . . . in writing . . . when the modifications have been completed [all modifications to be completed by October 31, 2012] to make the premises accessible as set forth in paragraph 3.  Thereafter YATES or his representative shall have forty five (45) days with in [sic] which to inspect the premises and notify Released Parties in writing of any objection to the modifications by notification to counsel for Released Parties in writing.  If no objection is made, YATES waives any objection to the modifications.");
- Settlement Agreement § 6 ("YATES . . . further agree[s] that no claim will be made in the future for equitable relief or remedial measures to be undertaken as a result of any alleged discrimination and/or other wrongful conduct by 505 SOUTH VAN NESS AVENUE PARTIES and release each of the Released Parties from any such equitable relief claims arising out of YATES visits to the subject AUTO CITY 76, located at/near 505 South Van Ness Avenue, San Francisco, California, on or about all dates stated in the complaint[9] and up to and including the date this agreement is executed by CRAIG YATES."); and
- Settlement Agreement § 8 ("Releasor acknowledges and understands that there is a risk that, subsequent to the execution of this Agreement, Yates may have Claims which shall in some conceivable way arise out of, shall be caused by, or shall relate to the matters released in this Agreement and which are unknown and unanticipated at the time this Agreement is signed, and that any Claims that are known or should be known may become more serious than they now expect or anticipate.  Nevertheless, Releasor hereby expressly waives all rights that he may have in such unknown and unexpected consequences or results.").

---

[9] Under Recital ¶ C, "[w]henever the word[] 'complaint' [is] used, [it] include[s] any and all amended complaints."  Settlement Agreement, Recital ¶ C.

### III. CONCLUSION

For the foregoing reasons, the Court grants the motion to amend. However, the parties are ordered to meet and confer by November 21, 2013, to determine whether they can reach an agreement as to whether equitable/injunctive relief is barred for the new visits based on the terms of the parties' settlement agreement. If the parties are able to reach an agreement, then they shall submit a joint stipulation and proposed order by November 21, 2013. If the parties are unable to reach an agreement, then Defendants shall file a motion to dismiss the request for equitable/injunctive relief with respect to the new visits by December 5, 2013.

This order disposes of Docket No. 59.

IT IS SO ORDERED.

Dated: November 7, 2013

_____
EDWARD M. CHEN
United States District Judge